# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| ALMA CARDONA, | |
| Plaintiff, | |
| v. | CAUSE NO.: 1:17-CV-308-TLS |
| BRC RUBBER & PLASTICS, INC., | |
| Defendant. | |

## OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment [ECF No. 25], filed by Defendant BRC Rubber & Plastics, Inc. The Plaintiff, Alma Cardona, filed this action against her former employer asserting that she was harassed "because of her sex, female, and national origin, Honduran," which created a hostile work environment. (Compl. ¶¶ 25, 26.)

The Defendant submits that it is entitled to judgment as a matter of law because there is no evidence that any employment action the Defendant took against the Plaintiff was motivated by, or in any way related to, her sex or her national origin. Rather, the evidence is that the Defendant terminated the Plaintiff's employment because it found that she violated the company's Zero Tolerance Policy by making a threat against another employee. The Defendant also moves for summary judgment on grounds that there is no evidence from which a reasonably jury could conclude that the Plaintiff was subject to a hostile work environment because of her sex or her national origin.

In response, the Plaintiff maintains that the reason the Defendant cited for terminating her employment was a pretext for national origin discrimination. She denies making a threatening

comment and submits that the Defendant engaged in a pattern or practice of treating Hispanic employees less favorable "than their American co-workers." (Pl.'s Br. 7, ECF No. 27.)

For the reasons stated in this Opinion and Order, the Court grants the Defendant's Motion for Summary Judgment.

## STATEMENT OF FACTS

The Plaintiff is a female of Honduran descent and speaks both Spanish and English. She worked for the Defendant on second shift as a Finisher, which required her to inspect processed parts and to trim the part if necessary.

In April 2016, the Plaintiff requested a meeting with the human resources supervisor, Mary Condon. During the April 5, 2016, meeting, the Plaintiff and two other female co-workers complained to Condon about Rickie Westbrook, an African-American male who was a second shift lead operator. They complained that Westbrook told them not to wander away from their workstations or to use their cellphones at work, and that he kept track of how often they used the restroom. If they were absent, Westbrook asked them where they were. Condon informed the women that Westbrook was doing his job by correcting behavior that the Defendant did not permit in the workplace.

Another BRC employee, Kenneth Ramirez, saw the women talking to Condon in her office. He informed Condon that a group of four employees, including those who were in her office, had a long history of hating Westbrook and wanted to get rid of him. According to Ramirez, he overhead and understood their conversations in Spanish. Ramirez provided Condon with additional background and told her that many of the employees on second shift were tired of the antics of the discontented employees.

Around this same time, Westbrook reported to his shift supervisor and to Condon that the Plaintiff told him nobody liked him, and later said she was going to have her husband (a former BRC employee) "get" him. On April 11, Condon spoke to Travis Riddle, another BRC employee. Riddle informed Condon about some of the disparaging comments that the Plaintiff was making about Westbrook. He also reported that the Plaintiff stated that Westbrook was going to "get his" one day. Riddle reported that he inquired of the Plaintiff what that meant, and she stated that it would be a surprise one day knowing that they both lived in the same town.

On April 12, Westbrook wrote a statement that he was advised by Riddle that the Plaintiff was making untrue statement about his sexual orientation and how he behaved during his time in prison. According to Westbrook, Riddle also told him about the threat the Plaintiff had made.

On April 12, Condon met with the Plaintiff. Because the Plaintiff wanted an interpreter present, Condon involved a salaried member of the management team, Noe Cruz, to interpret their conversation. Condon told the Plaintiff about her conversation with Riddle. Condon told the Plaintiff that the drama on the second shift was counterproductive, and that Condon was determined to get to the source of it. She explained that the Plaintiff's dislike of Westbrook appeared to be a contributing factor. Condon also advised that, based on what Riddle told her, the Plaintiff had stated a threat against Westbrook. The Plaintiff stated that she did not know what Condon was talking about and denied making any threat. Condon suspended the Plaintiff pending her investigation into the situation.

After Cruz left the meeting, the Plaintiff and Condon continued to talk in English. The Plaintiff claimed that she was not the person causing all the drama on the second shift. She asserted that because she could speak English she got pulled into situations in which she was not directly involved. Condon advised the Plaintiff not to allow others' issues to become her own,

3

and that her willingness to become involved in other people's business could potentially cost her a job.[1]

On April 13, Condon asked Ramirez if he had ever personally witnessed the Plaintiff make a threatening comment regarding Westbrook. Ramirez told Condon that he overheard the Plaintiff tell another employee, in Spanish, that her husband was "going to kick Rickie's ass." (Condon Dep. 72.)

On April 14, 2016, the Plaintiff was terminated for violation of the Zero Tolerance Policy.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). "A district court should deny a motion for summary judgment only when the non-moving party presents admissible evidence that creates a genuine issue of material fact." *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (first citing *United States v. 5443 Suffield Terrace*, 607 F.3d

---

[1] The Plaintiff's characterization of Condon's statement was that she was in trouble because she was interpreting for the Mexicans. (Cardona Dep. 65).

504, 510 (7th Cir. 2010); then citing *Swearnigen–El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008). Additionally, a court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

**DISCUSSION**

**A. Claims Based on National Origin**

The Plaintiff has claimed that treatment she endured based on her national origin created a hostile work environment. The Defendant moved for summary judgment on this claim, as well as a disparate treatment claim related to her termination from employment. The Plaintiff's Brief in Opposition [ECF No. 27] contains no analysis of a hostile or abusive work environment. As the parties have now framed this case as one involving a claim for disparate treatment, that is the claim the Court will address.

Discrimination claims may be reviewed on summary judgment under the direct or the burden-shifting methodologies. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). When a plaintiff responds to a motion for summary judgment on an intentional discrimination claim by relying on the burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a court should assess the case in those terms. *Id.*; *see also Ferrill v. Oak-Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (noting that *McDonnell Douglas* burden-shifting analysis has not been displaced). Here,

the Plaintiff has invoked the *McDonnell Douglas* burden-shifting methodology in response to the Defendant's Motion for Summary Judgment.

A plaintiff establishes a prima facie case of discrimination by presenting evidence that would allow a reasonable jury to find that: (1) she is a member of a protected class; (2) she was meeting the employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly situated non-protected class member. *See Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005). If the plaintiff can prove a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. *McDonnell Douglas*, 411 U.S. at 802. If the employer articulates such a reason, the burden shifts back to the plaintiff to show that a genuine issue of material fact exists as to whether the employer's stated reason was pretext. *Id.* at 804.

Although the Plaintiff purports to be proceeding under the burden shifting methodology, her Brief in Opposition contains no mention of the fourth element of the prima facie case: she has not attempted to identify another employee for comparison. The Plaintiff claims that her national origin motivated the Defendant's action in terminating her, but she points to no similarly-situated employee outside of her protected class who was accused of making a threat or violating the Zero Tolerance Policy. When a plaintiff claims to have been disciplined based on a prohibited reason, the plaintiff typically must demonstrate that the other comparators "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 479 (7th Cir. 2010) (quoting *Antonetti v. Abbott Labs.*, 563 F.3d 587, 592 (7th Cir. 2009)); *see also Filar v. Bd. of Educ. of City of Chi.*, 526 F.3d 1054, 1061 (7th Cir. 2008) ("All things being equal, if an employer takes an action against one employee in a protected class but not

another outside that class, one can infer discrimination."). But that is not the end of the summary judgment inquiry.

While a court "may use the familiar burden-shifting approach articulated in *McDonnell Douglas* . . . as 'a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases,' it is 'not the only way to assess circumstantial evidence of discrimination.'" *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018) (quoting *David*, 846 F.3d at 224). Regardless of whether a plaintiff uses the direct method of proof, indirect method, or both methods, the legal standard is the same, namely, "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterps., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

The question before the Court, then, is whether the evidence as a whole would permit a reasonable factfinder to conclude that the Plaintiff was dismissed from her position at BRC on the basis of her national origin. Such evidence may include:

> (1) Suspicious timing, ambiguous oral or written statements, or behavior toward, or comments directed at, other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly-situated employees outside the protected class received systematically better treatment; or (3) evidence that the employer offered a pretextual reason for an adverse employment action.

*Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014) (citing *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014)).

The Plaintiff submits that the facts surrounding her termination prevent summary judgment. "Most notably is the issue of whether [the Plaintiff] violated BRC's Zero Tolerance Policy as alleged by BRC." (Pl.'s Br. 3.) The Plaintiff asserts that she never made the threat that the Defendant used as the basis to determine that she violated the Zero Tolerance Policy. Legally speaking, her denial is of limited value. Pretext is not shown merely by demonstrating that the

7

employer erred or exercised poor business judgment; instead, the plaintiff must establish that the employer did not believe the reasons it gave for the adverse employment action. *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1044 (7th Cir. 2000). "[I]t is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005).

The Court must consider what evidence there is in the record that would suggest that the Defendant, acting through Condon, did not believe that the Plaintiff made a threat. To cast doubt on whether Condon honestly believed that the Plaintiff made the threat, she asserts that one of the employees who purportedly heard the threat, Kenneth Ramirez, does not even speak Spanish. In support of the claim about Ramirez's Spanish, the Plaintiff designates the Affidavit of Antonio Martinez. Martinez is the Plaintiff's husband and a former employee of the Defendant. Martinez offers that he had occasion to work with Ramirez when they were both employed at BRC, and that Ramirez does not speak Spanish. Based on the Affidavit, the Court understands Martinez to be saying that Ramirez did not speak Spanish in Martinez's presence while they were working. He provides no other basis upon which he could conclude that Ramirez was not *capable* of speaking Spanish. Martinez certainly does not aver to have personal knowledge of what Ramirez believed he overheard the Plaintiff say about Westbrook, or what Ramirez reported to Condon.

Neither is Martinez's Affidavit, or any other evidence the Plaintiff presents, relevant to whether Condon had a good faith belief that Ramirez could understand Spanish when she specifically asked Ramirez whether he had ever heard the Plaintiff make a threatening statement. Condon testified that Ramirez was bilingual, that she observed Ramirez speaking Spanish, and

that Ramirez told her he could understand the conversations he overhead in Spanish. Moreover, Condon did not rely solely on the account of Ramirez. She learned from both Westbrook and Riddle that the Plaintiff threatened Westbrook.

The Court next turns to the Plaintiff's assertion—not directly related to the Plaintiff or to the termination decision—that the Defendant "had a pattern and practice of discrimination against Hispanic workers." (Pl.'s Br. 6, ECF No. 27.) The Court does not take the Plaintiff's reference to pattern and practice as intending to set forth a separate theory of discrimination, as recognized in 42 U.S.C. § 2000e-6, as such actions must be brought by the government. Nor does the Court find that the Plaintiff can avail herself of the burden-shifting framework set out in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), which applies to the government in § 2000e–6 litigation and to class-action plaintiffs in private actions alleging discrimination. *See, e.g.*, *Wall-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867 (1984). This is not a class action, and "the pattern-or-practice method of proof is not available to private, nonclass plaintiffs." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 149 (2d Cir. 2012). It is, however, appropriate that the Court consider whether the Plaintiff's evidence considered as a whole would permit a jury to find that she was terminated based on her national origin. *See id.* (noting that "[e]vidence of an employer's general practice of discrimination may be highly relevant to an individual disparate treatment . . . claim").

The Plaintiff again relies on the Affidavit of Martinez. She submits that when he was employed at the Defendant's facility, he "observed how Hispanic laborers were treated differently than their similarly situated American co-workers." (Pl.'s Br. 6.) Martinez's Affidavit, however, provides only "conclusory statements, not grounded in specific facts," which

"are not sufficient to avoid summary judgment." *See Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004). "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of truth of the matter asserted." *Id.* (quoting *Drake v. Minn. Min. & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (citations omitted)). Where Martinez's vague and conclusory assertions are not supported by specific, concrete facts, his assertions must be disregarded. For example, Martinez stated that "Hispanic workers were required to work on machines that were more physically demanding than their American co-workers." (Martinez Aff. ¶ 9.) However, the Affidavit provides no specific concrete facts to identify these employees, their relative experience and qualifications, the machines they worked on, or what made certain machines more physically demanding. Without such context, the Court has no basis to conclude that national origin played a role in job assignments. There is no explanation by Martinez of how jobs were even assigned. In contrast, Dave Laspas, the Operations Manager at the plant, provided specific testimony regarding the assignment of jobs. He explained that supervisors would review the schedule for the shift, which prioritized which machines to run, and assign jobs to employees based on their skill set and their technical ability to run a machine.

Martinez also recounts that Laspas jokingly said at a production meeting, in connection with advising employees that production needed to increase, that he felt sorry for the Mexican employees because their jobs were going to get even more difficult. The Court understands the inclusion of this incident in the record as intending to provide proof that the Hispanic employees indeed received more difficult job assignments. But the meaning of the "joke" is entirely too speculative.[2] In any event, the record does not suggest that Condon, the person who suspended

---

[2] When the Plaintiff described the incident, she stated that Laspas said "it would be sad because you had to have some quantities to get a bonus, and he was sorry for all the Mexicans that had to work harder." (Pl.'s Dep. 73, ECF

the Plaintiff and investigated whether there were grounds to terminate her employment, had any input regarding the machine assignments or that, conversely, these assignments impacted her investigation and determination.

Martinez also claims that "[t]here was a culture of discrimination at BRC against all of the Spanish speaking employees, regardless of their country of origin." (Martinez Aff. ¶ 16.) The specific example of this culture appears to be that supervisors "referred to all Spanish speaking employees as 'Mexicans,' despite their country of origin." (*Id.* ¶ 17.) Nothing about these statements would lead a jury to believe that Condon harbored animosity or had an ulterior motive, and that the Plaintiff's termination was due to her national origin. *Cf. Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 885 (7th Cir 2016) (noting that "remarks can raise an inference of discrimination when they are '(1) made by the decision-maker, (2) around the time of the decision, and (3) in reference to the adverse employment action'") (quoting *Egonmwan v. Cook Cty. Sheriff's Dep't*, 602 F.3d 845, 850 (7th Cir. 2010)) (footnote omitted).

The final piece of evidence that the Plaintiff would like the Court to consider, and the only evidence that is directed at the decision-maker, pertains to her interactions with Condon a few months before her termination. According to the Plaintiff, when she reported that another employee, who was a non-Hispanic male, had just verbally abused her, Condon's response was to call it a misunderstanding attributable to the Plaintiff's limited English. The Plaintiff does not explain how this shows that Condon was motivated by a discriminatory reason when she determined that the Plaintiff threatened another employee, or that she did not honestly believe

---

No. 27-1.) The implication of this version of what was said is, arguably, quite different. But the Court does not include the Plaintiff's account as a suggestion that it intends to ponder the nuances of the reported comments. The Court's sole task is to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. The accounts do, however, tend to show that the context and meaning of Laspas's statement is not clear.

that the Plaintiff made the threat. The isolated incident is not connected, either in time or subject matter, to the events leading to the adverse employment decision.

In short, the Plaintiff's claims under Title VII fail because she puts forth no evidence that would enable a reasonable jury to find that the nondiscriminatory reason Condon offered in support of her termination was a lie contrived to mask national origin discrimination. Condon was aware at the time she made the decision to terminate the Plaintiff's employment that the Plaintiff denied making the threat. Condon simply decided, based upon her investigation, that the Plaintiff's denial was not believable. Condon was entitled to make that determination, regardless of whether it was correct, so long as it was her honestly held belief. The Court does "not sit as a 'super-personnel department,' weighing the wisdom of a company's employment decisions; rather, [it is] concerned only with whether the employer's proffered explanation was honest." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 984 (7th Cir. 2001). The Plaintiff has not identified any conflict in the evidence regarding the reason the Defendant offered for her termination.

### B. Claims Based on Sex

The Plaintiff's Complaint also contains allegations of harassment based on sex in violation of Title VII, which makes it unlawful for an employer to discriminate against any employee on the basis of sex. 42 U.S.C. § 2000e-2(a)(1). The Defendant has moved for summary judgment on that claim, as well as any claim of disparate treatment related to her termination from employment. *See King v. Bd. of Regents of Univ. of Wis. Sys.*, 898 F.2d 533, 537 (7th Cir. 1990) (explaining difference between standards of proof for claims of sexual harassment and disparate treatment).

"[A] party opposing a summary judgment motion must inform the district court of the reasons why summary judgment should not be entered." *Riley v. City of Kokomo*, 909 F.3d 182 (7th Cir. 2018) (citing *Domka v. Portage Cty.*, 523 F.3d 776, 783 (7th Cir. 2008); *see also Marion v. Radtke*, 641 F.3d 874, 876–77 (7th Cir. 2011) ("When a plaintiff fails to produce evidence, the defendant is entitled to judgment; a defendant moving for summary judgment need not produce evidence of its own.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)); *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (holding that the plaintiffs had waived claims where they did not respond to defendant's arguments and "did not provide the district court with any basis to decide" them). The Plaintiff's response to the Defendant's Motion for Summary Judgment does not contain a single fact that would support a claim for harassment or discrimination based on sex. Because the Plaintiff has not presented the court with evidence on which a reasonable jury could rely to find in her favor, *see Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010), the Defendant is entitled to judgment as a matter of law on the claims that the Defendant discriminated against the Plaintiff on the basis of sex.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendant's Motion for Summary Judgment [ECF No. 25]. The Clerk will enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on December 20, 2018.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT